IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADRIEL OSORIO,<br>on behalf of himself and<br>all similarly situated persons,<br><br>    Plaintiff,<br><br>    v.<br><br>THE TILE SHOP, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 15 C 15<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

  Adriel Osorio worked for The Tile Shop, LLC as a sales associate in its Skokie, Illinois retail store. He alleges that Tile Shop failed to pay overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1), and the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/4a. Osorio also alleges that Tile Shop made excessive deductions from its employees' wages in violation of the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1. Osorio now seeks to certify two classes—one for each of his state law claims—pursuant to Federal Rule of Civil Procedure 23(b)(3).

**Background**

  Tile Shop is a specialty retailer in stone tiles, setting and maintenance materials, and related tile accessories. Behrman Decl. ¶ 2. It is based in Plymouth, Minnesota and has 118 retail stores in 30 states. *Id.* Each store generally has a store manager,

one or two assistant managers, and several sales associates. *Id.* ¶ 3. Sales associates and assistant managers clock in and out of Tile Shop's computer system each day. *Id.* ¶ 5. Tile Shop's sales associates are responsible for selling tile and tile installation products. *Id.* ¶ 3. Assistant managers have supervisory responsibilities, but they also are responsible for making sales. *Id.*

Assistant managers and sales associates are compensated largely based on commissions earned on products they sell. *Id.* ¶ 6. They are also eligible to earn bonuses called "spiffs" on net sales of certain products and from periodic incentives. *Id.* For example, assistant managers are eligible to earn monthly bonuses based on individual monthly sales and store performance. *Id.* Commissions are earned based on the total gross profit dollar amount from an employee's net sales. *Id.* ¶ 7. A sales associate or assistant manager is paid a commission on a sale only after the customer decides to purchase a product, the product is ordered and delivered, and the customer pays for the product in full. *Id.* Commissions are paid to sales associates or assistant managers on a semi-monthly basis. *Id.* Commission income may vary from employee to employee and from pay period to pay period, but if a sales associate or assistant manager does not earn $1,000 or more in commissions and spiffs in a pay period, Tile Shop pays the employee the difference, up to $1,000. *Id.* at ¶ 9. Tile Shop then recoups these advances in later pay periods via deductions from the employee's paycheck. Pl.'s Mot. for Class Cert., Ex. A. Prior to starting employment, each sales associate and assistant manager signs an agreement that attaches and incorporates Tile Shop's payment plan policy. The parties dispute whether this agreement complies with regulations regarding deductions from employee pay. With regard to the overall

2

pay scheme, Osorio contends that salespersons regularly work more than forty hours per week but that their pay, including commissions and spiffs, often does not reflect time-and-one-half compensation for overtime.

## Discussion

Osorio seeks certification of two classes, both limited to persons employed by Tile Shop in Illinois. The first corresponds to his excessive deduction claim under the IWPCA. The second corresponds to his unpaid overtime claim under the IMWL. Osorio does not seek conditional certification of an FLSA collective action.

A party seeking class certification bears the burden to "affirmatively demonstrate his compliance" with the requirements of Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A plaintiff seeking class certification must first satisfy the four prerequisites of Rule 23(a): 1) the class is so numerous that joinder of all of the class members is impracticable (numerosity); 2) there are questions of law or fact common to the proposed class (commonality); 3) the class representative's claims are typical of the claims of the class (typicality); and 4) the representative will fairly and adequately represent the interests of the class (adequacy of representation). Fed. R. Civ. P. 23(a)(1)-(4).

In addition to the requirements of Rule 23(a), a party must show that the proposed class falls within one of the three categories listed in Rule 23(b), in this case Rule 23(b)(3), which authorizes class certification in "a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

The decision on class certification is not and should not be turned into "a dress

3

rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). On disputed issues affecting class certification, however, a court may not simply assume the truth of the matters as asserted by the plaintiff. If there are material factual disputes, the court must "receive evidence ... and resolve the disputes before deciding whether to certify the class." *Id.* (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672. 676 (7th Cir. 2001)).

A. **Excessive deduction class**

Osorio's excessive deduction claim under the IWPCA is based on a regulation under that statute stating that "[n]o cash advance repayment agreement shall provide for a repayment schedule of more than 15% of an employee's gross wages or final compensation per paycheck." 56 Ill. Admin. Code § 300.800. Osorio contends that the sums that Tile Shop pays commissioned sales persons when their commissions fall short of $1,000 per bi-monthly pay period constitute cash advances and that Tile Shop regularly obtains repayment of these advances in later periods in violation of this regulation. The proposed class is defined as "[a]ll persons employed in a Tile Shop retail store in the State of Illinois, except store managers, who had a deduction made to a paycheck received at any time from January 2, 2005 up to and including the date of trial, in order to recoup a cash advance where the deduction was in excess of 15% of the gross pay received in that paycheck." Pl.'s Mot. for Class Cert. ¶ 1.

Tile Shop does not oppose the certification of this class, so the Court will review the Rule 23 requirements only briefly. First, the proposed class meets the numerosity requirement. Osorio contends that the class has at least 223 members, a figure derived from using wage and recoupment data obtained from Tile Shop. *See* Pl.'s Mot. for

Class Cert., Ex. D (Bulgarelli Decl. II) ¶¶ 4-8. After analyzing this data, Osorio's counsel identified 223 distinct individuals "who had a deduction to repay a cash advance, that was above 15% of their final pay in that pay period, within the proposed Excessive Deduction class period." *Id.* ¶ 7. This is more than sufficient to satisfy the numerosity requirement.

The proposed class also meets the commonality requirement, which requires a showing that the class members' claims "depend upon a common contention" which is "of such a nature that it is capable of classwide resolution." *Wal-Mart Stores*, 131 S. Ct. at 2551. The following questions, among others, are common to the class: 1) whether the payments that Tile Shop makes to employees who earn less than $1,000 in a pay period constitute cash advances within the meaning of the IWPCA, and 2) whether recoupment of these amounts in later pay periods was legal under the IWPCA. These questions are highly significant on the issue of liability.

The proposed class meets the typicality requirement, because Osorio's claims, like those of the class members, all arise from Tile Shop's application of a uniform compensation policy. The class also meets the adequacy of representation requirement, because proposed class counsel are experienced in class action litigation, and Osorio has no interests antagonistic to those of the other class members.

Finally, Tile Shop does not dispute that the proposed excessive deduction class meets both the predominance and superiority requirements set forth in Rule 23(b)(3). Tile Shop does not identify any significant individual issues that might make common issues anything other than predominant. And given the relatively modest amounts involved on a person-by-person basis (Osorio says his individual damages are a little

over $840), a class action is a far superior means than individual lawsuits to attempt to vindicate the claimed rights of the class than individual actions would be. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 7598 (7th Cir. 2014) (The "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (internal quotation marks omitted). In addition, there is no issue of potentially duplicative or overlapping litigation. There is another pending lawsuit involving Tile Shop's pay practices, which the Court will discuss in further detail in the next section, but it includes no claims regarding the company's recoupment practices. And because the proposed class is limited to Illinois employees, there is no question that this district is a proper forum for the dispute. Finally, Tile Shop has not identified any manageability concerns, and the Court is aware of none.

For these reasons, the Court grants Osorio's motion to certify the proposed excessive deduction class.

**B.     Unpaid overtime class**

Osorio also seeks to certify an unpaid overtime class, defined as: "All persons employed in a Tile Shop retail store in the State of Illinois, except store managers, who worked in excess of forty hours in any workweek, from January 2, 2012 up to and including the date of trial, in which the total amount of compensation received, divided by the total number of hours worked, was less than 1.5 times the applicable minimum wage rate in effect." Pl.'s Mot. for Class Cert. ¶ 1. As indicated earlier, Osorio seeks certification only with regard to the IMWL claim, not the parallel FLSA claim.

Tile Shop begins its opposition to certification of the unpaid overtime class with

the Rule 23(b)(3) factors of superiority and predominance, see Def.'s Mem. in Opp. to Pl.'s Mot. for Class Certif. at 4-11, so the Court will start there as well. Tile Shop's superiority argument focuses on a pending lawsuit in the District of Minnesota called *Chin v. The Tile Shop*. *Chin* involves claims under the FLSA for unpaid overtime. The theory of liability is essentially the same as the one advanced by Osorio here under the IMWL, and the requirements for liability under the two statutes are indistinguishable. *See, e.g., Cho v. Maru Rest., Inc.*, No. 15 C 8151, 2016 WL 3633339, at *3 (N.D. Ill. July 7, 2016).

The judge in the *Chin* case conditionally certified the case as a collective action in October 2014. Tile Shop says, and Osorio does not dispute, that about 270 current and former employees of the company's Illinois stores received court-authorized notice of the pendency of the *Chin* suit and their right to join the suit. About 90 of them opted into the case. The rest either chose not to do so, ignored the notice, or perhaps (for some few) never got the notice. The proposed IMWL unpaid overtime class in the present case includes all of the Illinois Tile Shop employees who received the opt-in notice in *Chin*, plus some others not encompassed within the plaintiff class in that case. Tile Shop argues that certifying Osorio's proposed IMWL class "would have the unfair effect of forcing individuals who have already been given notice and opportunity to pursue an overtime claim, but declined, to be part of this lawsuit." Def.'s Mem. in Opp. to Pl.'s Mot. for Class Certif. at 10. It says that this is "neither fair to these individuals or The Tile Shop nor an efficient use of judicial resources." *Id.* at 11.

Rule 23(b)(3) identifies four factors to be assessed in determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating

7

the controversy": A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D).

Tile Shop's argument regarding the interaction between this case and *Chin* focuses on the second of these factors. But the pendency of the *Chin* case is not a basis to decline class certification here or even to find that the superiority of the class-action mechanism has not been established. The Seventh Circuit addressed a parallel issue in *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 9791 (7th Cir. 2011), when it reviewed a decision that declined to certify an IMWL unpaid overtime class in a case in which it had conditionally certified an FLSA collective action on a parallel claim. The defendant argued, as Tile Shop argues in this case, that having an opt-in FLSA class along with an opt-out IMWL class would confuse potential class members and would rope unwilling participants into the opt-out class. The court disagreed, concluding that parallel opt-in and opt-out classes were not incompatible or otherwise inappropriate. The court explained that the "Rule 23(b)(3) [IMWL] class and the federal [FLSA] collective action are each comprised of a set of employees asserting injuries under either state or federal law . . . [and] [s]hould either or both groups prevail on the merits, each group member will receive only the relief that is prescribed under the law governing her part of the case." *Id.* at 978. On the potential for confusion, the court said that "[i]t does not seem like too much to require potential participants to make two

binary choices: (1) decide whether to opt in and participate in the federal action; (2) decide whether to opt out and not participate in the state-law claims." *Id.*

This case differs from *Ervin* because there are two separate lawsuits, proceeding on separate tracks, and *Chin* is a good deal further along than this case. When the Seventh Circuit addressed in *Ervin* the prospect of two parallel actions were class certification of the IMWL claims denied, it noted that having parallel cases in two courts could pose superiority or manageability issues:

> if these actions were to proceed separately—the FLSA in federal court and the state-law class action in state court—and entirely different and potentially worse problem of confusion would arise, with uncoordinated notices from separate courts peppering the employees. As a general rule, it will usually be preferable if the notice comes from a single court, in a unified proceeding, where the court and lawyers alike are paying close attention to the overall message the participants will receive.

*Id.* at 978. This "problem of confusion" might exist were the Court to certify the IMWL class exactly as Osorio proposes it. To highlight one potential problem, the employees who have opted into the *Chin* FLSA collective action presumably would opt out of the class in this case, but not necessarily, and if they did not they would essentially have two suits pending at the same time in two different courts seeking what amounts to the exact same relief under two different statutes, which would make little sense. But that potential problem is easily avoided, by defining the IMWL class to exclude Illinois employees who have opted into the *Chin* case—a finite and easily ascertainable group. Those employees would gain nothing by adding an IMWL claim to their arsenal in any event.

As for the employees who did not opt into the *Chin* case, the Court is not concerned that they would be, as Tile Shop contends, "forced" to participate in this case

even though they presumably chose not to join *Chin*. No forcing is involved; anyone who received notice would be completely free to opt out if he or she did not wish to be involved in the litigation. The Court also believes that the potential for confusion coming from getting notices from two courts regarding two separate but parallel cases could be eliminated or minimized through careful drafting of the disclosures in the notice. Finally, the Court notes that Osorio's proposed IMWL class is broader than the *Chin* collective, and thus there are some workers who are completely unaware of *Chin* but whose potential IMWL rights are nonetheless worthy of protection. For these reasons, the Court overrules Tile Shop's arguments that Osorio's proposed unpaid overtime class does not meet Rule 23(b)(3)'s superiority requirement.

Tile Shop has a better argument, however, on the question of predominance. Osorio's contention is that many workers regularly worked more than forty hours per week and yet did not receive compensation for that overtime that amounted to at least one and one-half times the minimum wage. *See* Mem. in Support of Pl.'s Mot. for Class Certif. at 3. The claims involve one significant common issue, namely Tile Shop's uniform pay policy regarding the compensation of sales persons. But the existence and terms of this policy appear to be undisputed. Rather, Tile Shop's defense to the IMWL claim is focused on an exemption from the law's overtime pay requirement for "commissioned employees," which adopts the parallel provision of the FLSA. *See* 820 ILCS 105/4a(2)(F). The FLSA exemption applies to an employee of a retail or service establishment if:

> (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or

services.

29 U.S.C. § 207(i).

Application of this exemption, which is likely to be the key focus of any trial (or dispositive motion), *requires* an individualized determination in this case: the parties agree that the putative class members' hours and the commissions are variable. Osorio contends that these individual issues will not predominate, because the application of the exemption involves mathematical calculations that can be made without difficulty from Tile Shop's records. Even if that is true,[1] it misses the point of the predominance inquiry. Specifically, it is difficult for the Court to see what common issues would even be involved, let alone disputed, at a trial. Osorio defines the purportedly common issues as follows:

> Concerning the Overtime Class: 1) whether overtime was paid at one and one-half times the regular rate for hours worked about 40 in a week; and 2) whether compensation paid was equal to one and one-half times the applicable minimum wage so as to trigger an exemption from the IMWL's overtime requirements.

Mem. in Support of Pl.'s Mot. for Class Certif. at 8. But the first issue is undisputed—Tile Shop concedes that it did not pay time-and-one-half for overtime, *see id.* at 9 & Ex. E—and the second issue is essentially a restatement of the commissioned salesperson exemption that *concededly* requires a person-by-person and week-by-week

---

[11] It is not altogether clear whether determination of liability would involve, as Osorio contends, merely reviewing records and performing calculations. Tile Shop contends that employees did not regularly, and were not required to, punch out for meal breaks, and as a result its time records are inaccurate. This would not pose a barrier to any particular employee establishing liability, *see generally Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)), but in order to establish the applicability or non-applicability of the commissioned salesperson exemption, testimony might be required in addition to records. This testimony likely would be variable among employees.

determination. Because the only actual common issue is undisputed, it appears that the only issues to be addressed at trial will be individual issues. As another court put it, the commissioned salesperson exemption

> mandates an individualized review of each particular class member to determine if overtime is due—namely, how many hours did they work in a given week; if they worked more than 40 hours per week; what was their regular rate of pay; did it amount to more than the prevailing minimum wage at that time; did they earn commission, and if so, how much; and, did that amount of commission constitute more than 50% of their compensation for that period.

*Velasquez v. Digital Page, Inc.*, 303 F.R.D. 435, 442 (E.D.N.Y. 2014). These issues, which are highly likely to be the only issues disputed at trial, are all individual issues in this case. In short, whether their determination is simple or difficult, individual issues significantly predominate over any common issues.

For this reason, certification of the proposed unpaid overtime class under Rule 23(b)(3) would be inappropriate. *See also, e.g., Steger v. Life Time Fitness, Inc.*, No. 14 C 6056, 2016 WL 245899, at *3-4 (N.D. Ill. Jan. 21, 2016) (declining to certify an FLSA collective action on similar grounds). The Court therefore denies Osorio's motion with regard to the unpaid overtime class and, as a result, need not address the other issues raised by Tile Shop.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for class certification in part and denies it in part [dkt. no. 113]. The Court declines to certify the proposed unpaid overtime class proposed by plaintiff but certifies the proposed excessive deduction class under Rule 23(b)(3), defined as follows: All persons employed in a Tile Shop retail store in the State of Illinois, except store managers, who

had a deduction made to a paycheck received at any time from January 2, 2005 up to and including the date of trial, in order to recoup a cash advance where the deduction was in excess of 15% of the gross pay received in that paycheck. Attorneys Mark Bulgarelli and Ilan Chorowsky are appointed as counsel for the plaintiff class. The status hearing set for January 6, 2017 is vacated and reset to January 9, 2017 at 9:30 a.m. Class counsel are directed to draft a proposed class notice and are to provide it to defense counsel and file it with the Clerk by no later than January 5, 2017. Counsel are to be prepared to discuss the proposed notice at the January 9 status hearing.

                                                              _____
                                                                   MATTHEW F. KENNELLY
                                                                   United States District Judge

Date: December 30, 2016