**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ADRIEL OSORIO, on behalf of himself and all similarly situated persons, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )  Case No. 15 C 15 |
| THE TILE SHOP, LLC, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Adriel Osorio, a former employee of The Tile Shop, LLC, has sued Tile Shop for failing to comply with the overtime pay requirements of the Fair Labor Standards Act (FLSA) (Count 1) and the Illinois Minimum Wage Law (Count 3). Osorio also has alleged that Tile Shop violated the Illinois Wage Payment and Collection Act (IWPCA) by making excessive deductions from his paycheck and the paychecks of other Tile Shop employees (Count 2). This Court granted Osorio's motion for class certification with respect to the IWPCA claim in December 2016. *See Osorio v. The Tile Shop, LLC*, No. 15 C 15, 2016 WL 7491810 (N.D. Ill. Dec. 30, 2016). Tile Shop has moved for summary judgment on the IWPCA claim, and Osorio has filed a cross-motion for partial summary judgment on the same claim. For following reasons, the Court grants Tile Shop's motion for partial summary judgment on the IWPCA claim and denies Osorio's cross-motion for partial summary judgment.

**Background**

**A.    Factual background**

The Tile Shop is specialty tile retailer. From September 2013 until February 2014, Osorio worked as a sales associate at one of Tile Shop's Illinois stores. He worked as an assistant manager at another Tile Shop store in New Mexico from February to July 2014. The other class members are persons currently or formerly employed in Tile Shop stores in Illinois (except as store managers) who had certain types of deductions made from their paychecks from January 2, 2005 onward.

Tile Shop sales associates and assistant managers earn commissions on the products they sell. Although these commissions are supplemented by various incentive payments, they are the primary form of compensation for Tile Shop's sales associates and most assistant managers. Tile Shop calculates its employees' compensation on a semi-monthly basis and pays them accordingly. If a sales associate or assistant manager earns less than $1,000 in a pay period, Tile Shop pays that employee the difference as what it calls a "recoverable draw." Def.'s Statement of Undisputed Material Facts (SUMF), App. Tab 2 (Behrman Decl.), Ex. C, at 4. If, for example, a sales associate's commission and incentive income for a particular pay period adds up to only $900, Tile Shop pays the employee a $100 draw "to bring his or her total compensation for the pay period to $1,000." Behrman Decl. ¶ 18. Tile Shop then reconciles the $100 draw against future compensation in excess of $1,000 per pay period, theoretically leaving the employee with a guaranteed $1,000 per pay period. In practice, however, for Osorio's pay period ending on December 15, 2013, Tile Shop recovered $247.74 from only $1,247.73 in earnings, leaving him $.01 short of $1,000 for

that period.  *See* Behrman Decl., Ex. E.

Although Tile Shop has revised portions of its Pay Plan during the relevant period, the terms that are material to this lawsuit have not changed.  The Pay Plan provides the following explanation of how Tile Shop compensates its sales representatives:

> All full time sales representatives' compensation is comprised of commissions earned on Net Sales gross profit dollars, Spiffs [bonuses on sales of certain products] earned on Net Sales dollars, and periodic incentives.  If compensation earned during a pay period is less than $1,000.00 dollars [sic], the employee will be paid the difference as a recoverable draw.  This draw will be recovered from future compensation in excess of $1,000.00 on the following pay periods until paid in full.  The pay period draw amount of $1,000.00 is based on an annual amount of $24,000.00.

Behrman Decl., Ex. C, at 4.

Both parties agree that the commission income "may vary significantly from pay period to pay period, from a few hundred dollars or less to several thousand dollars," depending on a number of variables including sales volume, the profitability of products sold, and the circumstances of the particular store where the employee works. Behrman Decl. ¶ 16.  "By paying employees a draw, The Tile Shop ensures that its sales personnel receive a guaranteed minimum compensation even during pay periods when sales were lower."  *Id.* ¶ 19; *see also* Pl.'s Resp. to Def.'s SUMF ¶ 21 (admitting Tile Shop's statement except to the extent that the use of the term "draw" implies it is not a cash advance under the IWPCA).  The draws in question count as part of an employee's gross wages and are subject to payroll and income taxes.  A Tile Shop employee may receive a draw during his last pay period of employment, even though he is not expected to make additional sales or render other future services to Tile Shop.  If

3

an employee has an outstanding draw balance at the end of his employment, Tile Shop does not require reimbursement of that sum.

**B.    Procedural background**

The procedural history of this case provides context for the present decision. In his first amended complaint, Osorio alleged that Tile Shop violated the IWPCA, 820 ILCS 115/9, by making deductions from his paycheck to recoup earlier draws without obtaining his express written authorization. Am. Compl. ¶¶ 49-53. In November 2015, the Court granted Tile Shop's motion for partial judgment on the pleadings with respect to Osorio's original IWPCA claim, finding that Osorio sufficiently authorized the deductions in question by signing the Pay Plan attached to his offer of employment. *See Osorio v. The Tile Shop, LLC*, No. 15 C 15, 2015 WL 7688442, at *3-4 (N.D. Ill. Nov. 27, 2015). In granting Tile Shop's motion, the Court observed that the deductions at issue looked like recoupments of cash advances, although the parties had not characterized them as such. In light of this apparent similarity, the Court also evaluated the sufficiency of the agreement under section 300.750 of title 56 of the Illinois Administrative Code, which imposes specific requirements on agreements regarding repayment of cash advances through payroll deductions. *Id.* at *4. Ultimately, the Court concluded that the signed Pay Plan provided valid, express authorization—both under the IWPCA, 820 ILCS 115/9, and under 56 Ill. Admin. Code 300.750—for Tile Shop to recoup prior draws from Osorio's paycheck. *Id.*

Osorio subsequently filed a motion for reconsideration, which the Court denied in January 2016. *See Osorio v. The Tile Shop, LLC*, No. 15 C 15, 2016 WL 316941 (N.D. Ill. Jan. 28, 2016). In its January 2016 opinion, the Court clarified that, whether or not

4

the Pay Plan Osorio signed was in fact an agreement to repay cash advances through later payroll deductions, it was sufficient to provide express written authorization for the deductions in question. *Id.* at *1-2.

In March 2016, the Court granted Osorio leave to file a second amended complaint in which he asserted a modified version of his IWPCA claim. *See Osorio v. The Tile Shop, LLC*, No. 15 C 15, 2016 WL 1270435 (N.D. Ill. Mar. 31, 2016). Specifically, Osorio sought to recharacterize the deductions at issue as repayments of cash advances. In granting Osorio's motion for leave to amend, the Court noted that it had not previously decided whether Tile Shop's draws constituted cash advances but rather had merely observed that the Pay Plan appeared to contemplate something like the repayment of a cash advance. *Id.* at *2-3. The Court concluded that the issue of whether Tile Shop's draws were actually cash advances (and, consequently, whether the deductions to recover those draws were actually recoupments of cash advances) required additional factual development. *Id.* at *3.

Osorio filed his second amended complaint in April 2016. In it, Osorio specifically alleges that Tile Shop made excessive deductions from his paycheck to recoup previously-paid cash advances, in violation of 56 Ill. Admin. Code § 300.800, which is a regulation implemented under the IWPCA that imposes a per-paycheck deduction limit on cash advance repayment agreements. 2d Am. Compl. ¶¶ 49-54.

**Discussion**

Tile Shop has moved for summary judgment on Osorio's IWPCA claim. Tile Shop advances four separate arguments in support of its motion. First, Tile Shop asserts that the IWPCA does not apply because it only regulates deductions from

5

wages, and the deductions at issue are not deductions from wages. Tile Shop also argues that its Pay Plan complies with the IWPCA because Osorio expressly consented to the deductions and they are not repayments of cash advances subject to section 300.800's deduction limit. Tile Shop argues, in the alternative, that the cash advance repayment regulations exceed the Illinois Department of Labor's statutory authority insofar as they apply to the agreement set forth in the Pay Plan. Lastly, Tile Shop contends that the IWPCA independently authorizes deductions made for the benefit of employees and that the deductions at issue are made for its employees' benefit.

Osorio has cross-moved for summary judgment. He asserts that Tile Shop's draws are "cash advances" under the IWPCA and, for that reason, Tile Shop's recovery of previously-paid draws from compensation in excess of $1,000 per month is subject to the regulation governing cash advance repayment agreements. According to Osorio, Tile Shop violated the IWPCA's limitation on cash advance repayment agreements by making deductions that exceeded 15% of his gross wages (and those of other class members) per paycheck.

Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact" and that party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the Court will review each motion "construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (internal quotation marks and citation omitted).

The IWPCA prohibits employers from making deductions from their employee's wages or final compensation unless the deductions are "(1) required by law; (2) to the

6

benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made," or are made by certain government entities for a particular purpose. 820 ILCS 115/9. The IWPCA tasked the Illinois Department of Labor (IDOL) with establishing rules "to protect the interests of both parties in cases of disputed deductions from wages," including rules that impose "reasonable limitations on the amount of deductions . . . which may be made during any pay period." *Id.* Pursuant to its authority under the IWPCA, IDOL has promulgated a rule stating that "[n]o cash advance repayment agreement shall provide for a repayment schedule of more than 15% of an employee's gross wages or final compensation per paycheck." 56 Ill. Admin. Code § 300.800.

The practice that Osorio challenges in his second amended complaint was, in fact, followed only after he gave "express written consent," and thus it does not run afoul of the text of the IWPCA itself. 820 ILCS 115/9. Rather, the IWPCA violation alleged in Osorio's second amended complaint is a violation of the 15% per paycheck limitation that the IDOL regulation imposes on cash advance repayment schedules. Under this regulation, Osorio's IWPCA claim—and the outcome of both parties' cross-motions for partial summary judgment—hinges on the question of whether Tile Shop's "recoverable draw" system is a cash advance repayment agreement subject to section 300.800's 15% per paycheck limit.

The terms "cash advance" and "cash advance repayment agreement" are not defined in the IWPCA or its implementing regulations. Nor has any court attempted to define the terms as they are used in the IWPCA. Osorio urges the court to look to the

7

FLSA for guidance in interpreting the meaning of "cash advance." In particular, Osorio points to a regulation under the FLSA that identifies one of the typical methods of compensation for retail store employees as payment of a "straight commission with 'advances,' 'guarantees,' or 'draws.'" 29 C.F.R. § 779.413(a)(5). Osorio contends that the FLSA regulation's treatment of draws and advances as interchangeable means that Tile Shop's "draws" must be cash advances under the IWPCA, such that the subsequent recovery of a draw constitutes repayment of a cash advance. This argument is not persuasive. The FLSA regulation upon which Osorio relies does not purport to define the terms "advance," "guarantee," or "draw." As its title "Methods of compensation of retail store employees" indicates, the regulation is merely descriptive. *Id.* All it does is outline a number of typical compensation structures for retail employees. The fact that the regulation makes no distinction between "advance," "guarantee," and "draw" (and that it encloses each of these words in quotation marks) suggests only that those three words are used interchangeably within the retail industry. *See also* 29 C.F.R. § 779.416(a) (noting that the periodic payments described in section 779.413 "are variously described in retail or service establishments as 'advances,' 'draws,' or 'guarantees'"). There is no indication that those who drafted the IWPCA and its implementing regulations intended to adopt the same equivalence.

When a term used in a statute is not otherwise defined by that statute, it "must be given [its] ordinary and plain meaning." *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000). In this case, although Webster's Third New International Dictionary does not define "cash advance" specifically, it defines an advance as "a furnishing of something (as money or goods) before a return is received." *Advance*, Webster's Third

8

New Int'l Dictionary 30 (1993). Black's Law Dictionary likewise defines advance as "[t]he furnishing of money or goods before any consideration is received in return." *Advance*, Black's Law Dictionary (10th ed. 2014). In *Gennell v. FedEx Corp.*, No. 05 C 145, 2014 WL 1091148 (D.N.H. Mar. 19, 2014), the court examined the meaning of the term "cash advance" in the context of a New Hampshire statute regulating employee reimbursements for work-related expenses not paid for by wages or a cash advance from the employer. Like the IWPCA, the New Hampshire statute did not define "cash advance." *Id.* at 4. Based on the definition of "advance" in Black's Law Dictionary, the court in *Gennell* observed that the term "cash advance" had an "expansive traditional meaning" that was limited only by the requirement that the employer provide the compensation "before the employee provides consideration." *Id.*

Courts also look to other provisions of the same statute to help determine a term's intended breadth in the absence of a statutory definition. *See Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 983 (7th Cir. 2014); *see also Robbins v. Bd. of Trs. of Carbondale Police Pension Fund*, 177 Ill. 2d 533, 541, 687 N.E.2d 39, 43 (1997) ("[W]here a word or phrase is used in different sections of the same legislative act, a court presumes that the word or phrase is used with the same meaning throughout the act, unless a contrary legislative intent is clearly expressed."). As Tile Shop notes in its motion, the IWPCA provides support for the conclusion that a cash advance, as the term is used in the Act, is compensation paid to an employee before that employee has provided consideration for it. Section 14.5(5) of the IWPCA prohibits employers from linking payroll cards to "any form of credit including, but not limited to, overdraft fees or overdraft service fees, a loan against

9

future pay, or a *cash advance on future pay or work not yet performed*." 820 ILCS 115/14.5(5) (emphasis added). In light of section 14.5(5)'s reference to "future pay or work not yet performed" and the relevant dictionary definitions, the Court concludes that, for purposes of the IWPCA, a cash advance is a payment made to an employee before the employee has provided consideration. In the present circumstances, a cash advance would be an advance on the employee's commissions for sales not yet made.

Viewed from one angle, there is a decent argument that this is what the "draws" under Tile Shop's Pay Plan are. In a pay period when the employee's actual earnings would be lower than $1,000, the company nonetheless pays him $1,000 in anticipation of future earnings. Under ordinary circumstances, the employee does not get to keep that money; he has to pay it back, or start paying it back, in the next pay period in which his earnings exceed $1,000. That makes the part of the draw that brings the employee's lower compensation during that period up to $1,000 look like a cash advance.

This, however, is not dispositive of the point in the Court's view. Tile Shop points to the fact that it does not attempt to recoup prior draws from employees who leave the company and that it pays even an employee who is on the way out the minimum $1,000 for his final pay period, even if his actual earnings for that period are less than $1,000. These features make the pay plan look like something other than a cash advance: if a payor isn't going to ask for his money back, that doesn't sound much like a loan (or an advance).

Because the undisputed facts establish that Tile Shop does not always require repayment of draws, the Court concludes that they do not constitute cash advances.

Rather, the best way to describe the draws is that they are an agreed-upon mechanism for smoothing out dips in an employee's commission income in order to provide some financial stability from paycheck to paycheck. The Court therefore concludes that Tile Shop's pay plan does not run afoul of 56 Ill. Admin. Code § 300.800 despite the fact that deductions from an employee's paycheck sometimes exceed that regulation's fifteen percent cap.

Having concluded that summary judgment in Tile Shop's favor is warranted on this basis, the Court need not address the alternative arguments offered by the parties and grants summary judgment in favor of Tile Shop on the IWPCA claim.

## Conclusion

For the foregoing reasons, the Court grants Tile Shop's motion for partial summary judgment on the IWPCA claim (Count 2) [dkt. no. 191] and denies Osorio's cross-motion for partial summary judgment on that claim [dkt. no. 215]. The case is set for a status hearing on April 2, 2018 at 9:30 a.m. to discuss what, if anything, remains to be done in the case to bring it to a conclusion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 23, 2018